UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ASHLEY TUCKER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FAMILIA DENTAL FORT WAYNE, PLLC,<br><br>　　　　Defendant. | CAUSE NO.: 1:21-CV-0417-HAB-SLC |

## OPINION AND ORDER

"The cover-up, more than the initial wrongdoing, is what is most likely to bring you down."

-Madeline Albright

Plaintiff Ashley Tucker's (Tucker) employer, Familia Dental Fort Wayne, PLLC (Familia) believed she ignored a directive from her supervisor and recruited others to help her lie about it. After Familia fired her, Tucker, who was eight months pregnant, filed this action asserting that it discriminated against her on the basis of her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act (PDA). Before the Court is Familia's Motion for Summary Judgment (ECF No. 16). The motion is fully briefed (ECF Nos. 17–19, 24–27, 29, 30, 32, 37) and ripe for consideration. Because the Court finds no genuine issue of fact connecting Tucker's termination and her pregnancy, Familia's motion for summary judgment will be granted.

**DISCUSSION**

**I.　　Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## II. Factual Background

The facts set forth below are taken from the parties' statements of material fact. (ECF Nos. 17, 25). Disputed facts are resolved in Plaintiff's favor as the legal standard requires.[1]

---

[1] Tucker submitted an affidavit where she contradicts or tries to explain the answers she gave in her deposition. Where Tucker disputes herself, the Court has included those facts as well. Familia has moved to strike portions of the affidavit under the "sham affidavit rule." To the extent that Tucker's affidavit conflicts with her clear deposition testimony, the Court has not considered those facts. Even so, none of

2

Beginning in August 2015, Familia employed Tucker in various capacities ranging from dental assistant to office manager. In mid-2020, Tucker became Familia's senior office manager for the Indiana region. As part of her duties as a senior office manager, Tucker supervised Miranda Ringel (Ringel), the manager of the Fort Wayne and Indianapolis locations. Tucker reported to Brittany Chambers (Chambers) who held the position of senior regional operations manager. Familia had other senior office managers located in different regions including, Illinois, Wisconsin, and Texas.

On January 24, 2021, Chambers directed Tucker to counsel a subordinate employee, Kirsten Richards (Richards) for attendance and other issues. Richards had several write-ups for attendance problems and had been put on a final warning. On the preceding Saturday, Richards and a doctor had an incident in which the doctor no longer wished for Richards to be his assistant. Tucker was aware of these issues.

As part of the directive to Tucker, Chambers instructed Tucker to have Ringel present to witness the verbal counseling and advised her on email protocol to HR once she had talked to Richards. (Tucker Dep., ECF No 25-2, at 36). On January 25, Chambers authored an email to Alison Geiken (Geiken), head of HR, confirming she had discussed with Tucker and Ringel the discussion to be held with Richards and counseled Tucker on email protocol:

> I wanted to personally follow up with you as I had a phone conversation with Ashley today, 1/25/2021, regarding email etiquette and the expectation of context when sending communication to others, HR included.
>
> Also, I covered the expected conversation for Kirsten Richards with both Ashley AND Miranda. They will be delivering together to ensure we have that second set of ears.

(ECF 25-2 at 53).

---

the facts about which there is a dispute are material facts to the Court's decision and so, the Court need not address the request to strike paragraph by paragraph.

3

Tucker acknowledges in her deposition that Chambers, "said that she wanted someone to be present for the consultation, either by phone or in person, so that there was a witness." (Tucker Dep., at 35). She also acknowledges that Chambers wanted her to email HR after talking to Richards. (*Id.*at 36). But Tucker's deposition testimony is ambivalent as to whether Chambers asked her to have a manager present for the consultation, whether she "suggested" or specified Ringel be present, or something else. (*Id.* at 36-37). In any case, on January 25, Tucker counseled Richards by herself.

Tucker explains that the same employees do not work each day and that during this time the office was short-staffed. Another employee called off and Richards ended up working with Tucker on that day. While they were together, Tucker discussed with Richards the incident that had occurred the prior weekend when Richards "got into it" with a doctor. Tucker also states that because the office was so short-staffed, there was not another manager available for her to bring in during that conversation.

On January 25, Chambers texted Tucker inquiring how the counseling of Richards had gone. Tucker told Chambers that Richards understood Familia's expectations and was receptive of those expectations. The next day, January 26 at 9:49 a.m., Ringel texted Chambers and told her that she had not been contacted by Tucker about the counseling session with Richards. (ECF 19-2, at 9). Later that morning, Ringel spoke with Tucker. Tucker explains that she was "looping in" Ringel on the counseling she had with Richards. Apparently, Ringel had a different interpretation about the substance of that conversation because after their conversation ended, Ringel phoned Chambers to tell her that Tucker asked Ringel to lie to Chambers and say she had been present for the counseling session when she was not. Ringel documented her conversation

4

with Tucker in an email sent from Ringel to Chambers and to Geiken at 11:46 a.m. on January 26:

> Hi Alison,
>
> I wanted to reach out to you regarding the situation with Ashley and Kirsten. Yesterday (1/25/2021) Brittany Chambers reached out to me and asked if I would sit in on the conversation between Kirsten and Ashley. I was expecting to get a call from Ashley yesterday to partake in the verbal write up and was never contacted. I reached out to Brittany Chambers this morning to update her that Ashley has not contacted me regarding the conversation with Kirsten. Shortly after that conversation took place with Brittany, Ashley called me to loop me in that she had the discussion with Kirsten yesterday and that she was very receptive. She also mentioned that if Brittany reached out to me to please let her know that I was a part of the discussion with Kirsten. I asked my Lead Front Desk if there were any missed messages yesterday that needed to be relayed to me from Ashley and she said she did not receive a phone call from Ashley. Ashley has been trying to get in contact with me all morning to make sure we are both on the same page, but I have not contacted her back yet as I wanted to ensure to get this statement over to HR. Ashley reached out for me again via bat phone and asked my Lead Front Desk to find out if I was on the phone with Brittany Chambers…

(ECF No. 19-2 at 11). Tucker does not dispute that Ringel had these communications with Chambers, though she denies asking Ringel to lie to Chambers.

On January 26, Tucker conducted a second counseling session with Richards and had Yesenia Lopez (Lopez), a lead dental assistant, present for that session.[2] Lopez is not a manager. Following the counseling session, Tucker wrote an email to human resources using Lopez's email account and signed the email as coming from Lopez. (ECF No. 19-2 at 13). The email stated that Tucker counseled the employee on January 25 (not January 26) with Lopez present.[3]

---

[2] The record about these events is confusing and the Court has pieced them together as best the record will permit. There is reference to this second counseling of Richards being by telephone with Lopez present on the call. Additionally, the text messages indicate that Chambers understood Tucker having told her that Ringel also had participated in the call. (ECF No. 25-4, p. 14; Chambers: "you just told me earlier that you had [Ringel] on the phone during delivery. As we specifically discussed [Ringel] being present yesterday and that it must be a salaried member of management.") Tucker clarified indicating that she had not said Ringel was present but that she was notified later. (*Id.*).

[3] Tucker states that this was a typo and that the conversation occurred on January 26. She does not dispute that the date in the email was January 25.

5

Tucker disputes that the email was "from her" and provides several versions, not necessarily in conflict with one another, of what occurred. In one version, she says that after she and Lopez spoke with Richards, Lopez went back to work. Tucker asked Lopez about sending an "email to hr to verify she was present." (ECF No. 25-4, p. 11 "Detailed Sequence of Events"). Lopez was busy so she (Lopez) signed into her personal email and Tucker told her "I could write it she could verify or change what she wanted and then send it since she was with patients." (*Id.*). In her deposition, Tucker testified:

> I did not ask [Lopez] to use her email account. [Lopez] and I were both up front and [Lopez] was going to write over her conversation with [Richards]. She ended up having a patient walk in so she went into the back and so while she was in the back I had wrote up an email and [Lopez] came back up, she read over everything and she sent it during lunch…I did not send it for her.

(Tucker Dep. p. 57). In her affidavit, Tucker states, "[Lopez'] email to HR was reviewed by both me and [Lopez] and [Lopez] went over the information and sent it." (Tucker Aff. ¶15). What is clear, no matter which statements the Court credits, is that Tucker typed the email on Lopez' email account, the email was sent from Lopez' account, and to Familia the email appeared to be from Lopez. (Tucker Dep., pp. 57-58). Also clear in the record is that Ringel was not present for any counseling session with Richards that also included Tucker.[4]

Needless, to say, Familia was confused about these events and tried to make sense of the various communications. The record contains text messages and emails from Chambers, Tucker and others. On January 29, Tucker, Chambers and Geiken discussed the counseling of Richards by phone. Tucker described this conversation in her deposition:

> They had asked me about the date on the email and for [Richards], why we were having another conversation or why we needed to have – I had asked why she needed to have another conversation because she was already on a final warning

---

[4] Ringel appears to have talked with Richards, now for the third time, at some point by telephone on January 26. Tucker testified that she was also on the phone with Richards and called Ringel to have her involved in a conversation with Richards. (Tucker Dep. p. 55-56).

> that should have led to termination and that it did not involve me personally… It was her instance with the doctor and the write-up scenario. So, I didn't understand – I told them I didn't understand why there was a need for me to lie because it had nothing to do with me when they asked about the date incident.

(Tucker Dep. p. 63). On February 4, 2021, Chambers and Geiken called Tucker and notified her that she was terminated. Tucker recalls being told that she was terminated for sending an email with falsified information, for not having a manager present as directed when counseling Richards, and for asking Ringel to lie.

At the time she was terminated, Tucker was eight months pregnant. She was scheduled to begin her pregnancy leave under the FMLA on February 15, 2021.

### III. Analysis

"Title VII makes it unlawful in relevant part for an employer 'to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.'" *E.E.O.C. v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 593 (7th Cir. 2022) (quoting 42 U.S.C. § 2000e-2(a)(1)). In 1978, Congress extended Title VII protection to pregnant women through the PDA by amending it in two ways: (1) declaring that "sex discrimination includes discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions'"; and (2) providing that "'women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.'" *Id.* (emphasis omitted) (quoting 42 U.S.C. § 2000e(k)).

On a motion for summary judgment, a plaintiff may establish a genuine issue for trial by demonstrating that "the evidence would permit a reasonable factfinder to conclude that the plaintiff's ... sex ... or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece

7

of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). Accordingly, "the sole question that matters" is "[w]hether a reasonable juror could conclude that" the plaintiff would not have suffered the adverse employment action if she had a different sex or age, "and everything else had remained the same." *Ortiz*, 834 F.3d at 764 (citing *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994)).

A plaintiff may also make a case for going to trial under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). ("[T]he well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases."); *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010). Thus, at the summary judgment stage, the proper question before the Court is whether the evidence would permit a reasonable factfinder to conclude that Plaintiff's pregnancy caused the adverse employment action. *Ortiz*, 834 F.3d at 765. The burden is on the plaintiff to demonstrate that genuine issues exist for trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003).

Plaintiff invokes the *McDonnell Douglas* evidentiary approach to organize her case and so the Court will do the same. To establish a claim of sex discrimination using this approach, Tucker must establish: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that Familia treated a similarly-situated individual outside [Tucker's] protected class more favorably." *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012) (citing *Dear*

8

*v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009)). If Tucker satisfies those elements, the burden then shifts to Familia to identify a legitimate, nondiscriminatory reason for the action taken. *Id*. (citing *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010)). If Familia advances a nondiscriminatory reason for terminating Tucker, summary judgment would only be erroneous if Tucker produced evidence that the proffered reason was a pretext for improper discrimination. *Id.*

There is no argument that Tucker fails to meet the first and third elements of the prima facie case – she was, after all, a pregnant woman that was fired. But Familia argues that Tucker fails to establish a prima facie case because she cannot show that she was meeting Familia's reasonable expectations or that any similarly situated senior office manager was treated more favorably. Even so, Familia asserts that it has provided a legitimate nondiscriminatory reason for Tucker's termination and there is no evidence that the reason was a pretext for improper discrimination.

For the second element, Tucker disputes that she was not performing her job satisfactorily; she argues that she was not told specifically to have Ringel present to counsel Richards and that the email she authored using Lopez's email contains an error on the date but is otherwise accurate. The Seventh Circuit has noted that—in the context of Title VII cases when an employee contends that the employer's stated reason for terminating her is pretextual—"the analysis of the legitimate expectations inquiry [may merge] with the pretext analysis." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). That is the Plaintiff's assertion here. The Court thus merges both together in the pretext section later in this opinion.

This leaves the Court with the fourth element of the prima facie case – how Familia treated other senior office managers who falsified information and were not pregnant. Tucker

tries to identify other non-pregnant office managers who were given multiple chances to keep their jobs after falsifying different records. She does this with statements in her affidavit. But Tucker's affidavit contains statements that lack the foundational requirement of personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration ... must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Tucker makes sweeping statements that other employees were subject to a progressive discipline policy before they were fired. For instance, she asserts:

> Sarah Farnwald was given many chances to redeem herself as a result of the multiple violations and infractions while at Familia Dental. I have since learned this is called "progressive discipline" and that was the actual practice at Familia Dental – nobody was fired for a first infraction, and in fact, Sarah, like others was given multiple chances to correct and remedy their performance before being fired.

(Tucker Aff., ECF no. 25-1, ¶5). She also claims that Farnwald produced fake doctor's notes and took unauthorized vacation time. Although Farnwald was Tucker's predecessor as the senior office manager, which could make her a valid comparator, she provides no foundation for how she knows Farnwald's disciplinary record. This is where employment records and disciplinary files might have filled the gap in evidence, but Tucker does not offer any. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) (holding that the plaintiff failed to identify a similarly situated employee where she "presented only vague, conclusory assertions about incidents outside her personal knowledge."). So even if Tucker believes Farnwald falsified documents or committed what, in her view, are comparable offenses, that alone does not make them similarly situated.

10

What's more, Tucker seeks to establish in her affidavit what she could not in her deposition, that is that Familia regularly employed a progressive discipline scheme for other non-pregnant employees who committed multiple infractions. When asked during her deposition about progressive discipline, Tucker was asked "do you know one way or another whether or not there was a policy in place that required following progressive discipline before going to termination?" Tucker responded, "just by word of mouth." (Tucker Dep. p. 73). Tucker has identified no Familia employment policy showing that it followed a progressive discipline policy nor has she provided any foundational information in her affidavit to explain why she now "knows" that progressive discipline was used. She cannot contradict her deposition without explaining the basis of her personal knowledge in a later affidavit to survive summary judgment. *See Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005); *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998).[5]

Tucker also tries to show Ringel is a similarly situated non-pregnant employee. She asserts: "Miranda Ringel was terminated for claiming to be in the office when she was not there." (Tucker Aff. ¶ 10). But her statements about Ringel are even more problematic from a personal knowledge perspective. Ringel replaced Tucker as the senior office manager after Familia fired Tucker. (Tucker Dep. pp. 52-53). Tucker claims she has "personal knowledge" about the representations she makes in her affidavit, but the Court has no idea how this could be

---

[5] As noted, Tucker identifies no progressive discipline policy in Familia's employee handbook. Nor is there evidence that Familia employed a formal policy. Tucker submits an anonymous email written to in which the writer states: "Familia Dental has not set a standard protocol for the hiring and firing of employees. The process the company presents for terminating employees is a huge mess." (ECF No 25-4, p. 23). Other than this "evidence," Tucker has presented nothing concrete to show the existence of a progressive discipline policy. Further, even if one existed the Seventh Circuit has observed, "when a progressive discipline policy permits the employer to exercise discretion in discharging an employee without exhausting all of the policy's steps, failure to follow all of the steps does not suggest a discriminatory motive." *Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344, 353 (7th Cir. 2009).

so and Tucker does not say. Again, this is where employment records and disciplinary files could fill the gap. But "[a]t summary judgment... saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." *United States v. 5443 Suffield Terrace, Skokie*, 607 F.3d 504, 510 (7th Cir. 2010).

In short, Tucker has not identified any similarly situated non-pregnant employee treated more favorably than she was by Familia. *Simpson,* 827 F.3d at 662 ("But at summary judgment Simpson did not submit admissible evidence of other nurses receiving favorable treatment—i.e., not being disciplined after engaging in misconduct—nor did Simpson supply a foundation for the contention that she and Carter have personal knowledge of the alleged misconduct and the defendant's reaction.").

But even if the Court gives Tucker the benefit of all doubt and assumes she meets all the prima facie case requirements, she must still present evidence to overcome Familia's legitimate nondiscriminatory reason given for her termination *and* show that her sex/pregnancy was the real reason. Evidence of pretext is "evidence that the employer's proffered reason for the discharge is 'patently inconsistent with the evidence before the court.'" *Smeigh v. Johns Manville, Inc.*, 2010 WL 3781492, at *6 (S.D. Ind. Sept. 22, 2010). "'Pretext means a dishonest explanation, a lie rather than an oddity or an error.'" *Id*. (*quoting O'Regan v. Arb. Forums, Inc*., 246 F.3d 975, 983 (7th Cir. 2001)). "[T]he Court must analyze whether or not [defendant's] proffered explanation is a lie to cover up unlawful retaliation." *Id*. A plaintiff must present evidence that the defendant's explanation is unworthy of credence and that her sex was a determinative factor behind the defendant's adverse action. *See Maguire v. Marquette Univ.*, 814 F.2d 1213, 1216-18 (7th Cir. 1987); *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980) (both stressing that the plaintiff

must show not only a false reason but also a causal chain in which race or another forbidden criterion plays a dispositive role).

Familia says it terminated Tucker for her performance: falsifying information, failing to follow Chambers' directive, and for asking Ringel to lie to cover up her mistake. Tucker has explanations for two of these offenses and outright denies asking Ringel to lie. But "[a] district judge does not sit in a court of industrial relations. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII … do[es] not interfere…" *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir. 1987). It is not this Court's role to "question the wisdom of a company's decisions on how to run its business," rather the courts role is "only to assure that such decisions are not intended to provide cover for illegal discrimination." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946–47 (7th Cir. 2006). Moreover, an employer can make a mistake or act unfairly when making personnel choices while still not being discriminatory in its decision-making.

For sure, Tucker believes she should not have been terminated; but what she fails to do is produce evidence casting doubt on the nondiscriminatory reasons given for her termination. And how could she? She admits not having Ringel present when she counseled Richards – and even if the Court accepts her testimony that Chambers only told her "someone" needed to be present, she admits having *no one* present during the first counseling with Richards. Tucker concedes that Ringel emailed Chambers and Geiken telling them that Tucker asked her to lie. And, with that background, she admits writing an email on Lopez' email, and that the email, on its face, contained a false date, which Familia could reasonably interpret as another attempt by Tucker to lie. In the end, Familia needn't be right. It must only be honest.

Tucker's attempts to produce evidence showing that Familia's reasons were a pretext for sex/pregnancy discrimination boil down to two arguments: timing and progressive discipline. Tucker asks the Court to infer that the timing of her firing – less than two weeks before she was set to take FMLA leave – permits a jury to conclude that she was terminated because she was pregnant. But this argument ignores well-settled Seventh Circuit law, that "[o]n summary judgment, in particular, 'it is clear mere temporal proximity is not enough to establish a genuine issue of material fact.'" *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004)). Without more, timing doesn't get Tucker where she needs to go.

Next, Tucker repeats the progressive discipline argument discussed above claiming that other non-pregnant employees were given more chances before being terminated. This may well be true; still it doesn't help Tucker when she cannot point to any non-discretionary policy Familia had, and deviated from, when it terminated her. Such evidence combined with timing gets her closer to a genuine issue of fact from which a jury could infer that Familia would not have terminated her if she wasn't pregnant. But she hasn't produced any such evidence and the evidence, taken as a whole, is that Familia believed Tucker ignored Chambers' directive and engaged others to cover it up. Tucker has not raised a genuine issue of fact that her pregnancy played any part in Familia's decision-making. Familia's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the above reasons, Familia's Motion for Summary Judgment (ECF No. 16) is GRANTED. The Clerk is directed to enter judgment for the Defendant.

SO ORDERED on November 8, 2023

                                              s/ *Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT